IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**CAROLINA POWER & LIGHT COMPANY,**

**FLORIDA POWER CORPORATION,**

Plaintiffs,

v.

**UNITED STATES OF AMERICA,**

Defendant.

Case No. 04-0037C

Judge Wheeler

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to the Court's order dated January 18, 2006 and Appendix A to the Rules of this Court, plaintiffs Carolina Power & Light Company and Florida Power Corporation, and defendant the United States, respectfully file the following Joint Preliminary Status Report. Where necessary, the parties set forth their views on points on which they do not agree.

**(a) Does the court have jurisdiction over the action?**

Plaintiffs assert that this Court has jurisdiction over the action, pursuant to 28 U.S.C. § 1491(a)(1). Defendant asserts that, although it agrees that this Court possesses jurisdiction to entertain this action, the issue of the Court's jurisdiction over the spent nuclear fuel breach of contract cases is currently pending before the United States Court of Appeals for the Federal Circuit in PSEG Nuclear, LLC v. United States, No. 05-5162 (Fed. Cir.), an interlocutory appeal of this Court's ruling that the Court of Federal Claims does not possess jurisdiction to adjudicate

claims associated with the Standard Contract breach. See Florida Power & Light Co. v. United States, 64 Fed. Cl. 37 (2005).

**(b) Should the case be consolidated with any other case and the reasons therefor?**

***Plaintiffs' view.***

The case should not be consolidated with any other case. The Government has on at least three occasions sought consolidation of the spent nuclear fuel ("SNF") cases. In response to one such request, the Chief Judge ruled in part that:

> consolidation - even as to the particular issues of rate of acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages.

*Yankee Atomic Electric Co. v. U.S.*, (No. 98-126 C), filed January 30, 2004. Since that time, several cases, including certain of the "lead" cases and others, have in fact proceeded with dispositive motions and/or trial.

***The Government's view.***

Defendant has previously requested that the Court reassign all of the spent nuclear fuel cases to a single judge, followed by consolidation for the limited purpose of resolving issues surrounding the spent nuclear fuel acceptance schedule terms of the Standard Contract. The Court has not granted the Government's request. Nevertheless, defendant continues to believe that reassignment and consolidation of the spent nuclear fuel cases, which would permit resolution of issues surrounding the schedule terms that appear in every Standard Contract, is appropriate. Absent that reassignment and consolidation, defendant continues to believe that a coordinated discovery proceeding, as discussed in prior filings with the Court, is appropriate. Beyond those requests for reassignment or coordinated discovery, defendant has not identified

any other case pending before this Court that involves the specific nuclear power plant at issue in this case and, therefore, has not identified any additional reasons for seeking consolidation of this case with any others.

**(c) Should trial of liability and damages be bifurcated and the reasons therefor?**

***Plaintiffs' view.***

Trial of liability and damages should not be bifurcated. With respect to liability, the Government's performance failures with respect to spent nuclear fuel and/or high level waste have been held as a matter of law to be breaches of the Standard Contracts. *Maine Yankee Atomic Power Co. v. United States.*, 225 F.3d 1336 (Fed. Cir. 2000); *Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000); *see also, e.g., Energy Northwest v. United States*, 2006 WL 242672 (Fed. Cl., January 30, 2006); *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163 (2005); *Consumers Energy Company v. United States*, 65 Fed. Cl. 364 (2005); *Entergy Nuclear Generation Company v. United States*, 64 Fed. Cl. 336 (2005).

***The Government's view.***

Liability for partial breach of contract by the Government of the Standard Contract at issue in this case has not been established. Defendant believes that liability for partial breach of contract cannot be established until a determination is made regarding the minimum mandatory schedule for acceptance of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") by which the Government was contractually obligated to accept contract holder SNF and/or HLW. The Court should resolve issues involving the acceptance schedule under which the Government is obligated, pursuant to the Standard Contract, to accept plaintiffs' spent nuclear fuel (including the rate at which the Government is obligated, under the contract, to accept spent

nuclear fuel from all of the contract holders). Once the Court resolves those issues, any further trial proceedings regarding liability and damages should be resolved in a single proceeding.

**(d) Should further proceedings in this case be deferred pending consideration of another case before this court or any other tribunal and the reasons therefor?**

***Plaintiffs' view.*** Further proceedings should not be deferred pending consideration of other cases.

***The Government's view.***

Defendant continues to believe that this case, and other spent nuclear fuel cases pending before this Court, should be stayed until the "lead" SNF cases as designated by the Chief Judge, as well as other cases that have already proceeded to trial, have reached the point that substantive and definitive guidance regarding the appropriate resolution of a variety of legal issues in the cases have been obtained. The Chief Judge has identified six "lead" or "accelerated" cases (out of the original 66 SNF cases, of which 58 remaining pending following a decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), and amicable resolutions or withdrawals of other cases) in which the spent nuclear fuel acceptance schedule issues were to be decided. These acceptance schedule issues, which should resolve the rate at which the Department of Energy is obligated to accept spent nuclear fuel from the nuclear utility contract holders under the terms of the Standard Contract, must be decided before the Court can evaluate specific damages causation issues. Without resolution of the issues surrounding the acceptance schedule by which the Department of Energy was obligated to accept plaintiff's spent nuclear fuel under the terms of the Standard Contract, the Court cannot identify whether certain specific damages that plaintiffs allege they have incurred were "caused" by the Department of Energy's delay in beginning SNF acceptance or whether those costs would have been incurred regardless

of the delay. Therefore, it is anticipated that such a stay would greatly streamline both discovery and trial time in this case and the other remaining SNF cases.

**(e) In cases other than tax refund actions, will a remand or suspension be sought and the reasons therefor and the proposed duration?**

Plaintiffs do not intend to seek a remand or suspension. Defendant states that it does not seek a remand of this case at this time, but that the Court should suspend this case for the reasons discussed in the prior section of this report.

**(f) Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and the schedule proposed to effect joinder?**

Plaintiffs do not intend to effect joinder of other parties to this case. Defendant states that, at the present time, it has not determined whether it will be necessary to join other parties to this case.

**(g) Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56 and, if so, a schedule for the intended filing?**

***Plaintiffs' view.*** Plaintiffs do not presently intend to file a motion pursuant to RCFC 12(b), 12(c), or 56.

***The Government's view.***

If the Court does not stay this case, defendant may file a motion for partial summary judgment, similar to those filed in other previously filed spent nuclear fuel cases, regarding the acceptance schedule terms of the Standard Contract; a motion for partial summary judgment regarding the Department of Energy's obligation to accept plaintiff's Greater-Than-Class-C radioactive waste; and a motion regarding the date through which damages in this litigation

should be recoverable. Nevertheless, before filing any partially dispositive motions, defendant believes it appropriate to take some discovery from plaintiffs to allow defendant to identify any evidence in plaintiffs' possession that would either support or counsel against summary judgment.

**(h) What are the relevant factual and legal issues?**

***Plaintiffs' view:*** Plaintiffs believe that the relevant factual issues may involve the costs associated with the actions that have been taken regarding spent nuclear fuel at the Crystal River, Shearon Harris, H.B. Robinson, and Brunswick nuclear stations, as a result of the Government's breach of the Standard Contracts for those plants (although Plaintiffs do not expect or concede that such matters will present any *bona fide* contested issues). Plaintiffs believe that the major relevant legal issues, *i.e.,* those regarding the Government's breach, have already been determined conclusively as a matter of law. The Government may raise defenses regarding causation and the like that could be determined to be factual or legal issues.

***The Government's view:***

The relevant legal and factual issues in this case may include, but may not be limited to, the following:

1. Whether the Government is liable for breach of the Standard Contract at issue in this case.

2. The basis and scope of any liability for the partial breach of the Standard Contract;

3. The contractually required schedule for the Department of Energy's acceptance of spent nuclear fuel and/or high-level radioactive waste;

4. The appropriate measure of the plaintiff's damages, if any, arising from any

partial breach of the Standard Contract;

5. Whether the Government breached its duty of good faith and fair dealing; and

6. Whether the Government is obligated to accept Greater-Than-Class-C low-level radioactive waste pursuant to the Standard Contract.

After the plaintiffs identify their damages claims in this litigation, and following discovery, defendant may identify additional issues.

**(i) What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The parties have not foreclosed reasonable settlement of this lawsuit, and are committed to engaging in settlement discussions and negotiations at the appropriate time.

**(j) Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling and, if so, the reasons why the case is appropriate therefor? A request for expedited trial scheduling is generally appropriate when the parties anticipate that discovery, if any, can be completed within a 90-day period, the case may be tried within 3 days, no dispositive motion is anticipated, and a bench ruling is sought. The requested place of trial shall be stated. Before such a request is made, the parties shall confer specifically on this subject.**

The parties do not request expedited trial scheduling. Plaintiff requests a trial date as early as practicable, as reflected in the attached Exhibit A.

**(k) Are there special issues regarding electronic case management needs?**

There are no special issues regarding electronic case management needs.

**(l) Is there other information of which the court should be aware at this time?**

**1.** **<u>Proposed discovery plan</u>.** In accordance with the Court's order dated January 18, 2006, the parties provide their respective positions regarding a proposed discovery plan.

***<u>Plaintiffs' view:</u>*** Plaintiffs are agreeable to a procedure whereby they will voluntarily produce a damages schedule in advance of commencement of fact discovery. This damages schedule will include an identification of categories of costs that Plaintiffs will seek as damages, quantification of such damages, and appropriate supporting documentation. Plaintiffs will also identify the person(s) who can provide information and explanations required for verification of the identified items or figures. Plaintiffs recognize that the government may wish to take traditional discovery regarding causation and reasonableness of claimed costs. Nevertheless, by agreeing to the voluntary initial production of a damages schedule and supporting materials, and by allowing the government to audit that schedule and to tailor its discovery to claimed costs in a reasonable manner, Plaintiffs expect both parties to be able to avoid wasteful discovery. Plaintiffs also expect to be able to avoid the tedious exercise of introducing voluminous invoice documentation and testimony into the trial record just to establish the amounts of dollars spent, and what they were spent for. Plaintiffs' intent is that by making a threshold damages schedule production, the parties should ultimately be able to stipulate to the amount and nature of the costs incurred.

With respect to dispositive motions, the government's practice has been to file nearly identical threshold partially dispositive motions regarding the so-called "pick up rate," and other issues. (The government has not yet prevailed upon any such motion.) If the government is going to pursue such motions in this case, Plaintiffs believe that it is more logical and efficient for such motions to be filed at the outset of the proceedings. Plaintiffs have therefore proposed a cut-off date for dispositive motions, in the attached Exhibit A.

With respect to affirmative discovery from the government, Plaintiffs currently do not expect to need significant formal fact discovery, although they must reserve their right to pursue such discovery in light of issues that might be raised by the government as the lawsuit progresses. Indeed, if the government will agree to voluntarily produce deposition and trial transcripts, with marked exhibits, for current and former government-employee witnesses from prior spent nuclear fuel damages cases, Plaintiffs may not need to seek any additional documents at all. Given this anticipated approach and Plaintiffs' above-noted agreement to make a voluntary threshold damages schedule production, Plaintiffs do not believe that good cause exists for either party to exceed the 25 question limitation in the Rules on the number of interrogatories. *See* RCFC 33(a). Similarly, Plaintiffs believe that 25 is a more than sufficient limit for document requests and requests for admissions on the part of each party. Finally, plaintiffs do not believe that more than 15 depositions of fact witnesses by each side are warranted in the circumstances of this case.

Plaintiffs have proposed a pre-trial schedule in the attached Exhibit A. Now that the circumstances have evolved in such a way that there is no "sufficient justification to continue the stay in this case," *see* Order dated January 18, 2006, the interests of justice militate in favor of as early a trial date as is practicable. As the Court is well aware, Plaintiffs are not receiving pre-judgment interest on the already-incurred costs that will be sought. Accordingly, Plaintiffs are suffering very real economic harm in connection with delay in resolution of their claims, and the interests of justice militate in favor of "just, speedy, and inexpensive" determination of those claims. RCFC 1.

***The Government's view:***

Defendant's response to the plaintiffs' intention to begin discovery with the submission of damages schedules and the timing of discovery. Defendant generally agrees with the plaintiffs' suggested approach of beginning discovery with the submission of damages schedules, which we presume will be similar to those required by the Court's orders recently entered in other SNF cases, such as Consolidated Edison Co. v. United States, No. 04-0033C (Fed. Cl.). Further, the Government agrees with the dates that the plaintiffs have proposed in Exhibit A for the production of the plaintiffs' expert reports, defendant's response to the plaintiffs' damages schedules, and defendant's expert reports, as well as for the conclusion of fact and expert discovery. The only deadline in Exhibit A with which we must disagree is the proposed date for the parties' submission of any dispositive motions, which we discuss below. In addition, although the plaintiffs request in Exhibit A a trial date "as soon [after October 1, 2007] as possible," defendant respectfully requests that the Court, when scheduling any trial in this case, take into account the trial schedules then in existence relating to other SNF cases so that the Government is able to utilize the limited number of attorneys working upon and with knowledge regarding the issues in these cases in as coordinated a manner as possible. Finally, as discussed below, we cannot agree with some of the other suggestions that the plaintiffs have made above relating to limitations on depositions and written interrogatories and relating to the production of trial and deposition transcripts from other SNF cases.

Defendant's position regarding the plaintiffs' proposed deadline for filing dispositive motions. With regard to plaintiffs' request that the Court establish a deadline of April 2006 for the filing of any dispositive motions in this case, defendant cannot acquiesce in that request. Pursuant to plaintiffs' request, the Government will be required to file any summary judgment

motion in this case before any discovery from the plaintiffs has occurred. Presumably, if the evidence identified during discovery establishes that there is no genuine dispute regarding a material fact regarding various issues, defendant will be precluded from filing a summary judgment motion on those issues and, instead, will still have to proceed to trial on them. We are unaware of any precedent for requiring all summary judgment motions to be filed before the discovery period has even begun.

Further, with regard to the plaintiffs' belief that the Government should immediately file a motion similar to those filed in other SNF cases regarding the rate of SNF acceptance to be imposed for purposes of evaluating damages in these cases, defendant reiterates that it has obtained no discovery from the plaintiffs on these issues in this particular case. Yet, in response to the Government's motions for summary judgment on this issue, various plaintiffs in other cases have relied upon parol evidence to support their current interpretations of the meaning of the contract provisions as they relate to the SNF acceptance rate. In response, the Government, through discovery, has located statements by other plaintiffs that were made contemporaneously with the development of the Standard Contract language and thereafter that conflict with the plaintiffs' current interpretations and support the Government's position. In interpreting the requirements of a contract, the behavior of parties before the "advent of controversy" is often more revealing than the contract language alone. Omni Corp. v. United States, 41 Fed. Cl. 585, 591 (1998). "A principle of contract interpretation is that the contract must be interpreted in accordance with the parties' understanding as shown by their conduct before the controversy." Julius Goldman's Egg City v. United States, 697 F.2d 1051, 1058 (Fed. Cir. 1983), cert. denied, 464 U.S. 814 (1983). Here, without any discovery from the plaintiffs regarding their own internal understandings of the Standard Contract provisions from a time period contemporaneous

with the development of the Standard Contract, the Government should not be required to file any summary judgment motion until it has had a full and complete opportunity to take discovery on these issues.

Defendant's position regarding the plaintiffs' proposed number of depositions and written interrogatories. Defendant objects to the plaintiffs' proposal to limit the "parties" to 15 depositions and 25 written interrogatory questions. As an initial matter, the limitation that the plaintiffs propose is wholly one-sided. Although the plaintiffs have not participated in prior depositions in the SNF cases, approximately 61 Government fact witnesses have already been deposed over a period of 144 days of depositions. In addition, many of these witnesses have also testified in some or all of the trials in those SNF cases in which trials have already been conducted. As will be discussed below, these transcripts are available for the plaintiffs' purchase and use in this litigation. Further, the Government's responses to other SNF plaintiffs' extensive written interrogatories are available to the plaintiffs in this case on the Government's production website. Yet, the Government has no past deposition transcripts of the plaintiffs' potential witnesses and no past written interrogatory responses from the plaintiffs relating to the Standard Contract issues in this case. Accordingly, the parties are not starting from an equal position in regard to discovery. Instead, the plaintiffs have a significant advantage over the Government, in that it has available to it an extensive database of past Government document productions, written discovery responses, and deposition transcripts generated through discovery proceedings by other SNF plaintiffs with the same interests and motives as the plaintiffs in this case. The plaintiffs' request that the Government be limited to only 15 depositions and 25 interrogatories in this particular case, and that the plaintiffs be granted an opportunity to take an additional 15

depositions and serve 25 additional interrogatories beyond and above the extensive numbers already available to them, is inherently disproportionate and unfair.

In addition, the plaintiffs' claims in this case involve four different nuclear stations. Presumably, the plaintiffs intend to seek damages for costs incurred at each of these nuclear stations. Without any discovery, we do not know whether the individuals running each of the nuclear stations at issue are the same or whether each station has its own on-site management team. Nevertheless, even assuming that decisions regarding costs and SNF storage are made by a central headquarters team, the Government should be entitled to explore fully the storage capabilities and activities at each of the stations through the individuals most knowledgeable about those sites: the individuals who work there. In addition, we cannot know at this point – without even a damages claim to assist us in evaluating the scope of this particular case -- the scope and complexity of the costs that were incurred at each separate station and/or that will be claimed in this litigation. To determine whether particular costs were incurred as a result of the Department of Energy's delay or, instead, would have been incurred regardless of that delay, discovery from each of the four sites will likely be necessary. Accordingly, given the breadth of the plaintiffs' nuclear holdings at issue in this case, and the extensive discovery from the Government already available to the plaintiffs, the plaintiffs' proposed limitation on the Government's discovery should not be adopted here.

Defendant's response to the plaintiffs' request that defendant produce all past deposition and trial transcripts. Defendant is willing to provide the plaintiffs with a list of all of the depositions that Government fact witnesses have given in the SNF cases, the dates of those depositions, and a list of the court reporting companies that recorded those depositions. To the extent that the plaintiffs are requesting that the Government produce all of these deposition

transcripts, defendant was actually required to purchase each of these transcripts, and we understand that there may be copyright issues or other reasons that would create problems for the Government if it were simply to provide copies of those transcripts to various SNF plaintiffs that the court reporting services otherwise could sell to those plaintiffs. With the list of the court reporters, depositions, and deposition dates, the plaintiffs should be able to purchase any deposition transcripts that were previously taken.

**2. Administrative matters.** The Government requests that the Court enter the same protective order in this case that Judge Sypolt previously entered in other cases on May 9, 2002, as well as the order governing access to the RIS-web that Judge Sypolt entered on February 1, 2002. These orders must be entered prior to the production of documents and granting of access to DOE's records database previously provided to counsel in the other utility cases. In addition, the Government respectfully requests that the Court enter the e-mail preservation order that was entered in the prior SNF cases on November 8, 2001, to confirm the parties' obligations to preserve and search e-mail tapes. Absent this order, the Government may be subject to inconsistent and onerous requirements for the production of e-mail.

Plaintiffs do not anticipate a problem, as a general matter, with the entry of such orders, but desire the opportunity to review the final versions of any such proposed orders. Plaintiffs request that the entry of such orders not delay that pre-trial and trial schedule proposed in Exhibit A to this Report.

Respectfully submitted,

PETER KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Brad Fagg
BRAD FAGG
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile
COUNSEL OF RECORD FOR
PLAINTIFFS
CAROLINA POWER & LIGHT
COMPANY AND FLORIDA
POWER CORPORATION

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 305-7562
Facsimile: (202) 307-2503
COUNSEL FOR DEFENDANT

CERTIFICATE OF FILING

I hereby certify that on this 17th day of March, 2006, a copy of the foregoing "JOINT PRELIMINARY STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Brad Fagg