# Appendix 1

**IMPORTANT**: This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephone and return the original transmission to us at the address given below.

**TO**: Brad Fagg, Esq. **Fax**: 739.3001

**FROM**: Andrew Averbach

Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L St., NW
Washington, DC 20530 (20005 for FedEx)
Room:
Phone:
Fax:
Email:

**DATE**: 9.26.07

**Number of pages sent, including cover sheet**: 3

**RE**: CPL v. US

**Special instructions**:

**U.S. Department of Justice**

Civil Division

PDK:JED:HDL:APAverbach
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

Telephone:
(202) 353-0527

*Washington, D.C. 20530*

September 26, 2007

BY FACSIMILE AND FIRST CLASS MAIL

Brad Fagg, Esq.
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Ave., N.W.
Washington D.C. 20004

Re: *Carolina Power & Light Co. & Florida Power Co. v. United States*, Fed. Cl. No. 04-37C (Wheeler, J.)

Dear Mr. Fagg:

We have received the list of witnesses that Progress Energy intends to call or may call at trial, which contains 11 witnesses who are current or former employees of the Federal Government or of its subcontractors. I have also been informed by your colleague, David Kerr, that you have not yet determined which of these witnesses you intend to present through live testimony and which, if any, you intend to present through the designation of deposition or trial testimony. We do not necessarily object to the presentation of witnesses through prior testimony. However, we wish to make a few points clear.

First, as has been the practice in several spent nuclear fuel cases, we will request that any deposition designations be read aloud during the trial. Any other approach leads to the over-designation of testimony and would permit the parties to avoid the strict time limitations imposed by the Court in this case.

Second, the designation of prior testimony should not simply be via notice but, instead, pursuant to a timely motion pursuant to RCFC App. A, Rule 15(b). Many of the individuals on Progress Energy's witness list were not Government employees when they gave prior testimony and, for that and other reasons, their testimony may not be admissible pursuant to Fed. R. Evid. 801(d)(2). It is only through motion practice that a factual predicate can be set for the introduction of such evidence. This motion should be timely filed so as to enable us both to respond and, if necessary, to counter-designate the testimony of any witnesses whose prior testimony is ultimately deemed admissible.

Finally, please note that we do not represent all of the former Government employees included on Progress Energy's witness list, and cannot secure their attendance at trial. In

particular, we do not represent Mr. Barrett, Mr. Cole, or Mr. McDuffie. As to the remaining witnesses, please let me know which, if any, of them you intend to examine live at trial, so that I can attempt to secure their attendance.

Thank you for your cooperation.

Sincerely,

ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch

# Appendix 2

[1:] - [3:] 4/22/2002 Barrett, Lake H., Deposition Vol. 1, 4/22/02

page 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

```
- - - - - - - - - - - - - - - - - X
YANKEE ATOMIC ELECTRIC COMPANY;   : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER   : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC      : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER &    : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES    : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a      : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.;    : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY;   : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY      : 01-116C, 01-249C
- - - - - - - - - - - - - - - - - X
```

(Caption continued on the next page)

**Deposition of LAKE H. BARRETT**
**Washington, D. C.**
**Monday, April 22, 2002**
**9:31 a.m.**

**Job No.: 11792-4**
**Pages 1 through 272, Volume 1**
**Reported by: Diane Gomez, RPR**

page 2

```
DISTRICT; SOUTHERN NUCLEAR        :
OPERATING COMPANY, et al.;        :
COMMONWEALTH EDISON COMPANY;      :
BOSTON EDISON COMPANY; GPU        :
NUCLEAR, INCORPORATED; WISCONSIN  :
ELECTRIC POWER COMPANY; POWER     :
AUTHORITY OF THE STATE OF NEW     :
YORK; OMAHA PUBLIC POWER DISTRICT;:
NEBRASKA PUBLIC POWER DISTRICT;   :
and TENNESSEE VALLEY AUTHORITY,   :
             Plaintiffs           :
v.                                :
THE UNITED STATES,                :
             Defendant            :
- - - - - - - - - - - - - - - - - X
```

page 3

**Deposition of LAKE H. BARRETT, held at the offices of:**

**ARNOLD & PORTER**
**555 12th Street, Northwest**
**Washington, D. C. 20004**
**(202) 942-5000**

**Pursuant to agreement, before Diane Gomez, Registered Professional Reporter and Notary Public in and for the District of Columbia.**

[10:21] - [11:8] 4/22/2002 Barrett, Lake H., Deposition Vol. 1, 4/22/02

page 10

**Q What is your current position, Mr. Barrett?**
**A I'm the deputy director of the Office of**

page 11

**Civilian Radioactive Waste Management.**

Q For how many years have you been employed by the Department of Energy?
A Since mid-'85 in various different positions.
Q And prior to 1985 what was your position?
A I worked for the Nuclear Regulatory Commission since the end of '74 in various positions.

[38:14] - [40:2] 4/22/2002 Barrett, Lake H., Deposition Vol. 1, 4/22/02

page 38
Q When did you join the Department of Energy?
A Summer of '85 or spring of '85.
Q What was your position between the summer of '84 and the spring of '85?
A I was the branch chief of the engineering branch in the office -- the Division of Waste Management in the Office of Nuclear Materials Safety and Safeguards of the Nuclear Regulatory Commission.
Q Please describe for me your
page 39
responsibilities in that position.
A I was responsible for engineering for uranium mill tailings, low-level waste disposal sites and high-level waste disposal sites for the Nuclear Regulatory Commission is what my duties were.
Q Did you work with issues relating to the disposal of spent nuclear fuel in that position?
A Yes.
Q And can you describe for me your work on those issues?
A It was the engineering aspects of repository reviews for all media, including the development of branch technical positions and regulatory guidance and the regulations for high-level waste is what you asked about.
Q I asked about spent nuclear fuel.
A Well, okay, spent nuclear fuel and high-level waste.
Q Using the term "spent nuclear fuel" to cover both?
A Right.
Q Did you work with officials at the
page 40
Department of Energy in this position?
A Yes.

[44:5] - [44:20] 4/22/2002 Barrett, Lake H., Deposition Vol. 1, 4/22/02

page 44
Q What was your initial position at the Department of Energy?
A Division director, systems and transportation or something to that effect.
Q And what did that position involve?
A I was responsible for the development of the transportation systems to move spent fuel and high-level waste to the DOE facilities from their current locations was the primary job, and also for the systems engineering for the entire program.
Q Entire program you're referring to what?
A The civilian and all the different sites that we were looking at, the systems engineering requirements documents and the systems engineering structure for all of the civilian radioactive waste management program.

[527:] - [529:] 4/26/2002 Barrett, Lake H., Deposition Vol. 3, 4/26/02

page 527
IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - x
YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C
- - - - - - - - - - - - - - - - - - X
(Caption continued on the next page)

**Continued Deposition of LAKE H. BARRETT**
**Washington, D. C.**
**Friday, April 26, 2002**
**8:10 a.m.**

Job No.: 11792-8
Pages 527 through 825, Volume 3
Reported by: Diane Gomez, RPR

page 528

DISTRICT; SOUTHERN NUCLEAR :
OPERATING COMPANY, et al.; :
COMMONWEALTH EDISON COMPANY; :
BOSTON EDISON COMPANY; GPU :
NUCLEAR, INCORPORATED; WISCONSIN :
ELECTRIC POWER COMPANY; POWER :
AUTHORITY OF THE STATE OF NEW :
YORK; OMAHA PUBLIC POWER DISTRICT; :
NEBRASKA PUBLIC POWER DISTRICT; :
and TENNESSEE VALLEY AUTHORITY, :
Plaintiffs :
v. :
THE UNITED STATES, :
Defendant :
- - - - - - - - - - - - - - - - - - X

page 529

Continued Deposition of LAKE H. BARRETT, held at the offices of:

ARNOLD & PORTER
555 12th Street, Northwest
Washington, D. C. 20004
(202) 942-5000

Pursuant to agreement, before Diane Gomez, Registered Professional Reporter and Notary Public in and for the District of Columbia.

[771:3] - [772:3] 4/26/2002 Barrett, Lake H., Deposition Vol. 3, 4/26/02

page 771

(Deposition Exhibit Barrett 40 was marked for identification and was retained by counsel.)
Q In order to clarify the indecipherable prior questions, let's go and put the 1992 ACR in the record, because I have now discerned that we did not put that in the record before, and that's what we were referring to.
The court reporter has handed you Exhibit

**Number 40, which is the 1992 annual capacity report dated March '93, 1993, bearing Bates PA-102630 through 102678. Do you have that before you?**
**A Yes.**
**Q I would like to turn your attention to page three of this document, specifically pages three and four, captioned Waste Acceptance Projections. Are you there?**
**A Yes.**
**Q And if you look towards the bottom of page three, it refers to the Table 2-1 on the next page which would result in the receipt of 8,200 MTU of SNF**
page 772
**at the MRS facility during the first ten years. Do you see that?**
**A Yes.**

[1:] - [3:] 4/9/2002 Brownstein, Alan, Deposition Vol. 1 April 9, 2002

page 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**- - - - - - - - - - - - - - - - - - - - -x**
**YANKEE ATOMIC ELECTRIC COMPANY :**
**(98-126C)(Merow, S.J.) :**
**CONNECTICUT YANKEE ATOMIC POWER COMPANY :**
**(98-154C)(Merow, S.J.) :**
**FLORIDA POWER & LIGHT COMPANY :**
**(98-483C)(Wilson, J.) :**
**NORTHERN STATES POWER COMPANY :**
**(98-484C)(Wiese,J.) :**
**DUKE POWER, A Division of :**
**DUKE ENERGY CORP. :**
**(98-485C)(Sypolt,J.) :**
**INDIANA MICHIGAN POWER COMPANY :**
**(98-486C)(Hodges, J.) :**
**SACRAMENTO MUNICIPAL UTILITY DISTRICT :**
**(98-488C)(Yock, S.J.) :**
**SOUTHERN NUCLEAR OPERATING COMPANY, :**
**et al. :**
**(98-488C)(Yock, S.J.) :**
**COMMONWEALTH EDISON COMPANY :**
**(98-621C)(Hewitt, J.) :**
**BOSTON EDISON COMPANY :**
**(99-447C)(Allegra, J.) :**
**GPU NUCLEAR, INCORPORATED :**

page 2

**(00-440C)(Bush, J.) :**
**WISCONSIN ELECTRIC POWER COMPANY :**
**(00-697C)(Merow, S.J.) :**
**POWER AUTHORITY OF THE STATE OF NEW YORK :**
**(00-703C)(Damich, J.) :**
**OMAHA PUBLIC POWER DISTRICT :**
**(01-115C)(Bush, J.) :**
**NEBRASKA PUBLIC POWER DISTRICT :**
**(01-116C)(Sypolt, J.) :**
**TENNESSEE VALLEY AUTHORITY :**
**(01-249C)(Bruggink, J.) :**
**Plaintiffs, :**
**v. :Discovery**
**THE UNITED STATES, :Judge:**
**Defendant. :(Judge**
**- - - - - - - - - - - - - - - - - - - - -xSypolt)**

**McLean, Virginia**
**Tuesday, April 9, 2002**

**Deposition of ALAN BROWNSTEIN, a witness, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons**

page 3

**Boulevard, McLean, Virginia 22102-4859, at 9:30 a.m., Tuesday, April 9, 2002, and the proceedings being taken down by Stenotype by CATHERINE S. BOYD and transcribed under her direction.**

[9:18] - [10:2] 4/9/2002 Brownstein, Alan, Deposition Vol. 1 April 9, 2002

page 9

**Q. Mr. Brownstein, would you state your name for the record, please?**
**A. Alan Brownstein.**
**Q. And by whom are you employed, sir?**
**A. Department of Energy.**
**Q. And what is your title?**
**A. I'm a director of the Regulatory Coordination Division, and I'm on detail right**

page 10
now as a special advisor to the, special, senior policy advisor to the director.

[33:7] - [36:6] 4/9/2002 Brownstein, Alan, Deposition Vol. 1 April 9, 2002

page 33
Q. What were your duties with respect to implementing the terms of the standard disposal contract?
MR. BANES: Objection -- overbroad.
BY MR. TOMASZCZUK:
Q. I believe that's the term that you used.
You said one of your duties was to implement the terms of the standard disposal contract, is that correct?
A. Sure.
Q. And what --
A. Well, let me give examples. The contract required issuance of something called the Annual Capacity Report. That had never been done before, and so as an example, I was responsible for developing that.
I was responsible for interacting with the utilities and answering their questions.
page 34
I was responsible for implementing various items as a refund program as we had lost a lawsuit, actually we lost two lawsuits, and I was responsible for refunding money to the utilities, responsible for collecting data on spent fuel from the utilities, the RW-859.
Those are examples.
Q. Did there come a point in time in your career at DOE when you, when your duties changed from your duties that you just described as a nuclear industry specialist?
A. The, the position itself evolved over time.
Let me give a broad outline, see if that's responsive to your question.
Q. Please.
A. In 1985 when I started that position, I was basically a one-person show doing these type of activities with contractor support.
Over time, that position evolved into a branch of which I was the branch chief, and eventually that position evolved into a division, and each time, the responsibilities got a little bit broader.
Q. Okay. Thank you for that. That's
page 35
helpful.
When did the duties that you were performing as a specialist evolve into a branch chief position.
A. I do not recall the exact dates. I believe in the late '80s, it went to a branch, and I believe in the early '90s, it went to a division.
I just don't recall the exact times.
Q. And when it became a division, what was the name of the division?
A. Well, let's see. They do this internally.
The branch was called I believe Utility Interface and Logistics Branch.
I'm hesitating because I believe the division underwent several names, and I actually just don't recall it. I have to review my resume.

I didn't do that before I came here.
Q. Does the division, whatever its name, still exist today?
A. It does. I mean it's continued to evolve.
Q. And is it the Regulatory Coordination

page 36

Division?
A. It is not.
Q. It is not. Okay. What is its current name, if you know?
A. I don't know. I left, I left that area in early '95.

[1:] - [1:] 5/20/2002 Lawrence, Michael J., Deposition Vol. 1, 5/20/02

page 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**YANKEE ATOMIC ELECTRIC COMPANY, et al., Plaintiffs,**

**vs.**

**UNITED STATES, Defendant.**

**No. 98-126C**

**DEPOSITION OF MICHAEL J. LAWRENCE, VOLUME I**

**May 20, 2002**
**Richland, Washington**

[11:21] - [11:23] 5/20/2002 Lawrence, Michael J., Deposition Vol. 1, 5/20/02

page 11

Q. **Mr. Lawrence, are you represented by the government counsel today?**
**A. Yes.**

[13:15] - [13:24] 5/20/2002 Lawrence, Michael J., Deposition Vol. 1, 5/20/02

page 13

**What is your current position?**
**A. I'm associate laboratory director for Energy Science & Technology at the Pacific Northwest National Lab.**
**Q. What do you do as associate director for Energy Science & Technology?**
**A. I'm responsible for the energy programs, the information science programs, and material science programs that the laboratory conducts for the Department of Energy and industry.**

[25:15] - [26:15] 5/20/2002 Lawrence, Michael J., Deposition Vol. 1, 5/20/02

page 25

**Q. And how long were you director or acting director of the Nuclear Waste Policy Act Implementation Office?**
**A. From January of '84 to June of '84.**
**Q. And prior to January of '84 -- January of '84, what was your position?**
**A. I was the deputy director of the Nuclear Waste Policy Act Implementation Office and the -- I think it was director of spent fuel storage and transportation programs in the Nuclear Waste Policy Act Implementation Office.**

page 26

**Q. When did you start that position?**
**A. That position started in January of '83.**
**Q. And before that position, what did you do?**
**A. I was deputy director of the DOE program for geologic storage and disposal, which existed prior to the passage of the Nuclear Waste Policy Act. And I don't recall the name of that organization.**
**Q. When did you start that position?**
**A. I really don't recall. My guess would be late 1980, early 1981.**
**Q. What did you do in that position?**

A. As deputy director, I was responsible for overseeing the -- the implementation of the programs that were conducted in that organization and acting for the director when he was not there.

[201:11] - [201:21] 5/20/2002 Lawrence, Michael J., Deposition Vol. 1, 5/20/02

page 201

Q. (By Mr. Shapiro) Mr. Lawrence, we've handed you what we've had marked as Lawrence Exhibit 13, which is titled "Statement of Michael Lawrence, Accounting Director, RW." It's dated February 22, 1984.
Do you recall this statement?
A. I remember a number of Congressional hearings, not necessarily this specific one.
Q. Is it fair to say that this document represents your written testimony to the committee?
A. Yeah.

**Milner**

[1:] - [3:] 5/1/2002 Milner, Ronald A., Deposition Vol. 1, 5/1/02

page 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**- - - - - - - - - - - - - - - - - - - - -x**
**YANKEE ATOMIC ELECTRIC COMPANY :**
**(98-126C)(Merow, S.J.) :**
**CONNECTICUT YANKEE ATOMIC POWER COMPANY :**
**(98-154C)(Merow, S.J.) :**
**FLORIDA POWER & LIGHT COMPANY :**
**(98-483C)(Wilson, J.) :**
**NORTHERN STATES POWER COMPANY :**
**(98-484C)(Wiese,J.) :**
**DUKE POWER, A Division of :**
**DUKE ENERGY CORP. :**
**(98-485C)(Sypolt,J.) :**
**INDIANA MICHIGAN POWER COMPANY :**
**(98-486C)(Hodges, J.) :**
**SACRAMENTO MUNICIPAL UTILITY DISTRICT :**
**(98-488C)(Yock, S.J.) :**
**SOUTHERN NUCLEAR OPERATING COMPANY, :**
**et al. :**
**(98-488C)(Yock, S.J.) :**
**COMMONWEALTH EDISON COMPANY :**
**(98-621C)(Hewitt, J.) :**
**BOSTON EDISON COMPANY :**
**(99-447C)(Allegra, J.) :**
**GPU NUCLEAR, INCORPORATED :**

page 2

**(00-440C)(Bush, J.) :**
**WISCONSIN ELECTRIC POWER COMPANY :**
**(00-697C)(Merow, S.J.) :**
**POWER AUTHORITY OF THE STATE OF NEW YORK :**
**(00-703C)(Damich, J.) :**
**OMAHA PUBLIC POWER DISTRICT :**
**(01-115C)(Bush, J.) :**
**NEBRASKA PUBLIC POWER DISTRICT :**
**(01-116C)(Sypolt, J.) :**
**TENNESSEE VALLEY AUTHORITY :**
**(01-249C)(Bruggink, J.) :**
**Plaintiffs, :**
**v. :Discovery**
**THE UNITED STATES, :Judge:**
**Defendant. :(Judge**
**- - - - - - - - - - - - - - - - - - - - -xSypolt)**

**McLean, Virginia**
**Wednesday, May 1, 2002**

**Deposition of RONALD A. MILNER, a witness, called for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons**

page 3

**Boulevard, McLean, Virginia 22102-4859, at 9:30 a.m., Wednesday, May 1, 2002, and the proceedings being taken down by Stenotype by CATHERINE S. BOYD and transcribed under her direction.**

[9:20] - [9:22] 5/1/2002 Milner, Ronald A., Deposition Vol. 1, 5/1/02

page 9

**Q. And where are you employed, Mr. Milner?**
**A. U.S. Department of Energy.**

[15:16] - [15:24] 5/1/2002 Milner, Ronald A., Deposition Vol. 1, 5/1/02

page 15

**Q. And then you joined the office that**

I'll refer to as the OCRWM in or around 1984?
A. Correct.
Q. And have you been with OCRWM without interruption since 1984?
A. Yes.
Q. So you have been in OCRWM by my math roughly 18 years?
A. Roughly 18 years.

[16:21] - [17:4] 5/1/2002 Milner, Ronald A., Deposition Vol. 1, 5/1/02

page 16
Q. All right. What was your title when you joined OCRWM in 1984?
A. I was a branch chief, but I can't recall the exact title.
Q. What were your duties?
page 17
A. I was responsible for preparation of the total system life cycle cost analysis, fee adequacy analysis, preparation of the original Mission Plan.

[73:25] - [74:23] 5/1/2002 Milner, Ronald A., Deposition Vol. 1, 5/1/02

page 73
MR. TOMASZCZUK: Mr. Milner, I'm going
page 74
to hand you what I'm going to ask the court reporter to mark as Milner Exhibit 5.
It is the Mission Plan for OCRWM, Volume 1.
It's an excerpt dated June 1985.
(Milner Exhibit No. 5 was marked for identification.)
MR. SHULTIS: Alex, just for the record, and you might have already done this, but I just want it shown that this exhibit is pages through page 29 of Volume 1 of the 1985 Mission Plan.
MR. TOMASZCZUK: That's fair. I believe I identified it as an excerpt.
The Mission Plan goes on for several hundred pages.
What he has in front of him is an excerpt which consists of Part 1, Section 1, and Part 1, Section 2.
Section 1 is the introduction.
Section 2 is program strategy.
MR. SHULTIS: Thank you.

[83:15] - [83:23] 5/1/2002 Milner, Ronald A., Deposition Vol. 1, 5/1/02

page 83
MR. TOMASZCZUK: Ms. Reporter, could you mark as Milner Exhibit 6 the Table of Contents to the June 1985 Mission Plan which I had alluded to in one of my questions this morning, but it was not contained in the copy that I provided you?
(Milner Exhibit No. 6 was marked for identification.)

[197:] - [199:] 5/2/2002 Milner, Ronald A., Deposition Vol. 2, 5/2/02

page 197
IN THE UNITED STATES COURT OF FEDERAL CLAIMS
- - - - - - - - - - - - - - - - - - - - -x
YANKEE ATOMIC ELECTRIC COMPANY :

(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY :
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED : 0198

page 198
(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Thursday, May 2, 2002

Continued deposition of RONALD A. MILNER, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons 0199

page 199
Boulevard, McLean, Virginia 22102-4859, at 9:51 a.m., Thursday, May 2, 2002, and the proceedings being taken down by Stenotype by CATHERINE S. BOYD and transcribed under her direction.

[389:8] - [389:17] 5/2/2002 Milner, Ronald A., Deposition Vol. 2, 5/2/02

page 389
MR. TOMASZCZUK: Ms. Reporter, can we mark as Milner Exhibit 51 the March 1995 APR ACR?
(Milner Exhibit No. 51 was marked for identification.)
BY MR. TOMASZCZUK:
Q. Are you familiar with this document, Mr. Milner?
A. In general terms, yes.

[4614:1] - [4614:20] 8/11/2004 Yankee Atomic Electric Trial Transcript Vol. 21

page 4614

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**YANKEE ATOMIC ELECTRIC ) Case Nos.**
**COMPANY, CONNECTICUT YANKEE ) 98-126C**
**ATOMIC POWER COMPANY, and MAINE ) 98-154C**
**YANKEE ATOMIC POWER COMPANY, ) 98-474C**
**Plaintiffs, )**
**v. )**
**THE UNITED STATES, )**
**Defendant. )**

**Courtroom Number 5**

**National Courts Building**
**717 Madison Street, Northwest**
**Washington, D.C.**

**Wednesday, August 11, 2004**

**VOLUME 21**

[4711:20] - [4712:1] 8/11/2004 Yankee Atomic Electric Trial Transcript Vol. 21

page 4711

**BY MS. SULLIVAN:**
**Q Good afternoon, Mr. Milner.**
**A Good afternoon.**
**Q Mr. Milner, are you currently employed in the Office of Civilian Radioactive Waste Management at the Department of Energy?**

page 4712

**4712**

**A Yes, I am.**

[1:] - [2:] 4/15/2002 Rosselli, Robert M., Deposition Vol. 1, 4/15/02

page 1

**1**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**YANKEE ATOMIC ELECTRIC COMPANY CONNECTICUT YANKEE ATOMIC POWER COMPANY MAINE YANKEE ATOMIC POWER COMPANY FLORIDA POWER & LIGHT COMPANY NORTHERN STATES POWER COMPANY DUKE POWER, A Division of DUKE ENERGY CORP. INDIANA MICHIGAN POWER COMPANY SACRAMENTO MUNICIPAL UTILITY DISTRICT SOUTHERN NUCLEAR OPERATING COMPANY, et al. COMMONWEALTH EDISON COMPANY BOSTON EDISON COMPANY GPU NUCLEAR, INCORPORATED WISCONSIN ELECTRIC POWER COMPANY POWER AUTHORITY OF THE STATE OF NEW YORK OMAHA PUBLIC POWER DISTRICT NEBRASKA PUBLIC POWER DISTRICT TENNESSEE VALLEY AUTHORITY,**

**Plaintiffs, vs. Case Nos. 98-126C, 98-154C, 98-474C 98-483C, 98-484C, 98-485C 98-486C, 98-488C, 98-614C 98-621C, 99-447C, 00-440C UNITED STATES, 01-116C, 01-249C DEFENDANT.**

___________________________

**VOLUME I DEPOSITION OF ROBERT M. ROSSELLI**

**Taken on behalf of Sacrament Municipal Utility District April 15, 2002**

**- - -**

**BE IT REMEMBERED THAT, pursuant to the Washington Rules of Civil Procedure, the deposition of Robert M. Rosselli was taken before Marta M. Rice, a Certified Shorthand Reporter, and a Notary Public for the State of Washington, on April 15, 2002, commencing at the hour of 9:34 a.m., the proceedings being reported at the Hampton**

page 2

**Inn, 486 West Bradley, Richland, Washington.**

[16:18] - [19:7] 4/15/2002 Rosselli, Robert M., Deposition Vol. 1, 4/15/02

page 16

**Q. Now, is this the first point at which you began working on waste management issues for the Government, or had you had certain responsibilities in that area prior to that point?**

**A. I think it's fair to say that this was the first time that I got substantively involved on waste management sites.**

page 17

**Q. And this would be sometime around 1980, 1981?**

**A. Yes, it was around that time. I think it was a couple of years doing that before, roughly a couple of years before the Nuclear Waste Policy Act passed.**

**Q. And how long were you in that position?**

**A. I'm going, to the best of my knowledge, say it was about a couple of years, year-and-a-half to two years.**

**Q. And what was your next position?**

**A. Director, I believe it was called the resource management division in the office of Civilian Radioactive Waste Management.**

**Q. And what were your responsibilities as director of that division?**

**A. There were organizational development, human resources management, contract administration, information resources, budget and finance.**

**Q. And did you have people working for you in that position?**

**A. Yes, I did.**

**Q. Approximately how many? Do you recall?**

**A. No, I don't.**

page 18

**Q. More than 10?**

**A. Yes.**

**Q. More than 20?**

A. I really don't remember.
Q. How long did you hold that position?
A. Until 1984.
Q. Let me back up a step. You'd been an executive assistant in the office of civilian waste. Then, you became director of resource management division at the office of Civilian Radioactive Waste Management. Why did you take that position? What led to that change of position?
A. To the best of my recollection, sometime in the span of the -- while I was working in the waste program, initially, they had both defense and commercial waste in that same organization. Then they split out. At some point in there, they split out the defense waste, and essentially what we were working on was the civilian side. And so when the Waste Policy Act passed, they just grabbed that entity that was commercial and gave us a new name.
Q. You were doing the same work?
A. Essentially, it was the same work, yes,
page 19
it was.
Q. And you said you held that position until 1984?
A. That's right. May of '84.
Q. And what happened then?
A. I transferred to the Richland operations office here in Richland, Washington.

[21:14] - [22:11] 4/15/2002 Rosselli, Robert M., Deposition Vol. 1, 4/15/02

page 21
Q. And what were your responsibilities as deputy manager for business services?
A. I had all the administrative activities -- budget, finance, human resources, procurement. I had responsibility for the infrastructure. I had responsibility for the office of special concerns. I had responsibility for, what we called, the future outcome, it's economic development aspects and how we support community economics, the development. Initially, I had responsibility for the laboratory, Pacific Northwest National Laboratory.
page 22
Q. How long were you in this position?
A. Until current.
Q. Is that your current position today?
A. Yes, it is.
Q. Mr. Rosselli, after the time that you left the office of Civilian Radioactive Waste Management, which you estimated was approximately May of 1984, in your other positions within the department, have you had any involvement in waste management issues?
A. Yes.

[1:] - [1:] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 1

**UNITED STATES COURT OF FEDERAL CLAIMS**

**YANKEE ATOMIC ELECTRONIC COMPANY, ) CA NO. 98-126C**
**PLAINTIFF, )**
**VS. )**
**THE UNITED STATES, )**
**DEFENDANT. )**
**MAINE YANKEE ATOMIC POWER COMPANY, ) CA NO. 98-474C**
**PLAINTIFF, )**
**VS. )**
**THE UNITED STATES, )**
**DEFENDANT. )**
**CONNECTICUT YANKEE ATOMIC POWER COMPANY, ) CA NO. 98-154C**
**PLAINTIFF, )**
**VS. )**
**THE UNITED STATES, )**
**DEFENDANT. )**

**Deposition on oral examination of BEN RUSCHE, VOLUME 1, reported by Brad H. Thomas, Certified Realtime Reporter and Notary Public in and for the State of South Carolina; said deposition taken pursuant to notice of deposition and in accordance with the Federal Rules of Civil Procedure, at the Sheraton Hotel, 2100 Bush River Road, Columbia, South Carolina, commencing on Thursday, May 16, 2002, at the hour of 9:20 a.m.**

[2:] - [2:] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 2

**Appearances:**

**Representing the Plaintiffs:**
**JERRY STOUCK, ESQUIRE**
**Spriggs & Hollingsworth**
**1350 I Street, N.W., Ninth Floor**
**Washington, D.C. 20005-3305**

**Representing the Defendant:**
**R. ALAN MILLER, ESQUIRE**
**United States Department of Justice**
**Civil Division**
**1100 L Street, N.W.**
**Washington, D.C. 20530 0003**

[5:21] - [6:3] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 5

**Q. And it's very informal, as you can tell. So if you would like a break for any reason at any time, just let me know, or if there's anything else we can do for you during the course of the day, we'll try to accommodate you.**

page 6

**Sometimes -- is Mr. Miller representing you here today?**
**A. He is indeed.**

[11:17] - [11:21] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 11

**Q. All right. Well, let's start there with the date that it includes is 1996 dash. It says you were president of Management & Technical Resources, Inc. Is that still your position?**
**A. It is one of them, yes.**

[13:3] - [13:12] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 13

**Q. All right. So I think you just may have**

answered this question, but this Management Technical Resources you described as your consulting company, would you say generally you are employed in the consulting business?
A. Beg your pardon?
Q. Are you today generally employed in a consulting business? Is that what you do for a living?
A. On a part-time basis, yes.

[39:19] - [40:15] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 39
Q. Okay. Back up to you were appointed as director of OCRWM, I believe, in early 1984; is that right? Do you recall when you started?
A. When I started or when the appointment was?
Q. Well, when was the appointment? Let's start with that.
page 40
A. I think it was in January of '84 that I visited the White House. And the appointment followed thereafter.
Q. And when did you actually start working?
A. March, I believe, of '84 I was confirmed.
Q. Okay. And can you tell me generally -- we're going to come back to some of these things and go into a little more detail, but from 1984 -- when did you leave the Department? I think you said -- earlier today you said early 1988, I think is what you said?
A. I believe -- I believe that my actual retirement date from the Department was late November of '87.

[133:22] - [134:4] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 133
Q. And are you able to provide testimony, Mr. Rusche, about the technical, legal, and political obstacles to the implementation of the Nuclear Waste Policy Act during the period in
page 134
which you were the director of OCRWM?
A. I could certainly provide testimony on all three of those, which would largely be views and opinions of mine.

[168:23] - [169:8] 5/16/2002 Rusche, Ben, Deposition Vol. 1, 5/16/02

page 168
Q. (Mr. Stouck) Okay. We've now handed you a document that's marked Exhibit No. 12, Mr. Rusche.
page 169
A. Yes.
Q. It's stamped Draft on the front. It says, "Civilian Radioactive Waste Management Program Mission Plan, Volume I, Overview and Current Program Plans, December 20, 1983."
A. Yes.
Q. Bates number CTR-042-1065 through 1191. Is that what you have?

[1:1] - [1:23] 4/21/1999 Slater, Nancy H., Deposition Vol. 1, 4/21/99

page 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**- - - - - - - - - - - - - - - - X**
**YANKEE ATOMIC ELECTRIC :**
**COMPANY, :**
**Plaintiff, : Case No. 98-126C**
**v. : Senior Judge**
**: Merow**
**THE UNITED STATES, :**
**Defendant. :**
**- - - - - - - - - - - - - - - - X**
**Washington, D.C.**
**Wednesday, April 21, 1999**
**Deposition of NANCY H. SLATER, a witness herein, called for examination by counsel for Plaintiff in the above-entitled matter, pursuant to agreement, the witness being duly sworn by JAN A. WILLIAMS, a Notary Public in and for the District of Columbia, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Washington, D.C., at 10:10 a.m., Wednesday, April 21, 1999, and the proceedings being taken down by Stenotype by JAN A. WILLIAMS, RPR, and transcribed under her direction.**

[5:25] - [6:3] 4/21/1999 Slater, Nancy H., Deposition Vol. 1, 4/21/99

page 5

**Q. I appreciate that. Where do you work?**

page 6

**A. At the U.S. Department of Energy in the Office of Civilian Radioactive Waste Management in the Regulatory Coordination Division.**

[19:21] - [20:18] 4/21/1999 Slater, Nancy H., Deposition Vol. 1, 4/21/99

page 19

**Q. What were your duties in this 1991 to 1993 period when you were an industrial specialist?**

**A. I was involved in the preparation of the annual capacity report, the acceptance**

page 20

**priority ranking, answering questions both internal and external about the terms and conditions of the contract. Let's see. And whatever else may have arisen at the time.**

**I know, when we came in, we were on the tail end of a rulemaking, net versus gross, as sold was that clarification. So I wrapped part of that up. I believe I terminated a couple of nonutility contracts at the contract holder's request because they either no longer had the material or had, in fact, in one case I believe sold it to the government.**

**Q. Do you remember any other issues you worked on during that period?**

**A. '91 to '93, I think we began to discuss delivery commitment schedules at that point. Would that be about right? That would be about right.**

[1:] - [1:] 6/13/2002 Thompson, Nancy Slater, Deposition 6/13/02

page 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**- - - - - - - - - - - - - - - - X**
**YANKEE ATOMIC ELECTRIC :**
**COMPANY, MAINE YANKEE ATOMIC :**
**POWER CO., and CONNECTICUT :**

```
YANKEE ATOMIC POWER CO.,          : Case No. 98-126C
                     Plaintiffs : 98-474C, 98-154C
          -v-                   : (Senior Judge
                                :  Merrow)
UNITED STATES OF AMERICA,       :
            Defendant           :
- - - - - - - - - - - - - - - - X
```

Washington, D.C.
Thursday, June 13, 2002

Deposition of NANCY SLATER THOMPSON, a witness herein, called for examination by counsel for the Plaintiff in the above-entitled matter, pursuant to notice, the witness being duly sworn, taken at the offices of Spriggs & Hollingsworth, 1350 I Street, N.W., Washington, D.C., at 9:40 a.m., Thursday, June 13, 2002, and the proceedings being taken down in Stenotype by DEBORAH K. WILKINS, RPR, and transcribed under her direction.

[5:2] - [5:4] 6/13/2002 Thompson, Nancy Slater, Deposition 6/13/02

page 5

What is your current position?
A. I am the acting division director of the regulatory coordination division.

[1:] - [3:] 4/17/2002 Trebules, Victor W., Jr., Deposition 4/17/02

page 1

```
IN THE UNITED STATES COURT OF FEDERAL CLAIMS
-------------------------------------------X YANKEE ATOMIC ELECTRIC COMPANY
(98-126C)(Merow, S.J.) :CONNECTICUT YANKEE ATOMIC POWER COMPANY
(98-154C)(Merow, S.J.)  : MAINE YANKEE ATOMIC POWER COMPANY          :
(98-474C)(Merow, S.J.) :FLORIDA POWER & LIGHT COMPANY              :
(98-483C)(Wilson, J.)  :NORTHERN STATES POWER COMPANY              :
(98-484C)(Wiese, J.)  : DUKE POWER, a Division of DUKE ENERGY CORP.:
(98-485C)(Sypolt, J.) :  INDIANA MICHIGAN POWER COMPANY             :
(98-486C)(Hodges, J.): SACRAMENTO MUNICIPAL UTILITY DISTRICT      :
(98-488C)(Yock, S.J.)  : SOUTHERN NUCLEAR OPERATING COMPANY, et al. :
(98-614C)(Merow, S.J.) : COMMONWEALTH EDISON COMPANY                :
(98-621C)(Hewitt, J.) : BOSTON EDISON COMPANY                      :
(99-447C) (Allegra, J.)  GPU NUCLEAR, INCORPORATED                  :
(00-440C)(Bush, J.) : WISCONSIN ELECTRIC POWER COMPANY           :
(00-697C)(Merow, S.J.) : POWER AUTHORITY OF THE STATE OF NEW YORK   :VOLUME
(00-703C)(Damich, J.)  :  I OMAHA PUBLIC POWER DISTRICT                :
(01-115C)(Bush, J.) NEBRASKA PUBLIC POWER DISTRICT             :Discovery
(01-116C)(Sypolt, J.)  :Judge: TENNESSEE VALLEY AUTHORITY   :(Judge
(01-249C)(Bruggink, J.)                    :Sypolt)
               Plaintiffs,                 :PAGES
V.                                         :1 - 241
```

page 2

```
THE UNITED STATES,                         :
               Defendant.                  :
-------------------------------------------X
```

**Deposition of Victor W. Trebules, Jr.**
**Washington, DC**
**Wednesday, April 17, 2002**

**Reported by: Denise Dobner Vickery, RMR, CRR**
**JOB NO. 144458**

page 3

**April 17, 2002**
**9:32 A.M.**

**Deposition of Victor W. Trebules, Jr., held at the offices of:**

**Jenner & Block**
**601 13th Street, NW**
**12th Floor**
**Washington, DC 20005**

**Pursuant to notice, before Denise Dobner Vickery, a Registered Merit Reporter, Notary Public of the District of Columbia.**

[15:17] - [16:9] 4/17/2002 Trebules, Victor W., Jr., Deposition 4/17/02

page 15

**Q. When you joined the Office of Civilian Radioactive Waste Management, you say a year or two after the act was passed, so we're talking somewhere in the 1983-1984 time frame?**
**A. That's correct.**
**Q. What was your first position at the Office of**

page 16

**Radioactive Waste Management?**
**A. I don't remember the title of my first position. It was probably program analyst or something like that, but I'm not exactly sure.**
**Q. What did that position entail? What were your responsibilities in that position?**
**A. First major assignment I could remember was coordinating the preparation of the mission plan for the Civilian Radioactive Waste Management Program.**

[17:7] - [18:17] 4/17/2002 Trebules, Victor W., Jr., Deposition 4/17/02

page 17

**Q. I guess what I'm trying to get at is I'd like to have just a brief chronology of the different positions you've been in with dates, if possible.**
**So you started out as a program analyst in the Office of Civilian Radioactive Waste Management in the approximately 1983-1984 time frame. What I'd like you to do is going forward to the present with dates, if possible, just state the various positions you've held in the OCRWM.**
**A. Okay. Around the 1984-'85 time frame, as I said, I believe I was a program analyst. I think in 1985 or '86 I became the senior technical adviser and technical assistant to the Director of Office of Civilian Radioactive Waste Management. I don't remember the exact time frame, but when Admiral Watkins became Secretary of Energy, I was detailed to his**

page 18

**office for I think little over half a year as an adviser to the Secretary.**
**I then came back into the Office of Civilian Radioactive Waste Management I think in 1990 or 1991, and I was the Acting Director of what was called the M&O Management Division with responsibility to bring on board the M&O contractor for the program. I think that was 1991. About the a year or two after that, I became the Director of the Storage Division. The primary responsibility was to work on a proposed monitored retrievable storage facility.**
**A few years after that, I became the Director of the Program Management Division. And let's see. About four years ago I transferred out to Las Vegas to the Yucca Mountain site characterization office, and I'm currently the Director of the Office of Project Control.**

[48:5] - [50:20] 4/17/2002 Trebules, Victor W., Jr., Deposition 4/17/02

page 48

**MR. EIDUKAS: I'm going to go ahead and mark this as Number 3 and for the record I'm having marked Bates MS 069588 --**
**MR. STOUCK: 528?**
**MR. EIDUKAS: I'm sorry.**
**MR. STOUCK: I didn't hear.**
**MR. EIDUKAS: I'm sorry. I'll repeat. It's actually three pages. The first page is Bates number SN 069588D and then it skips some Bates numbers and then you have SN 069599 through 600. It's a document entitled "Proceedings of the 1983 Civilian Radioactive Waste Management Information Meeting," December 12th through 15th, 1983 in Washington, DC and the date of the actual document is February 1984.**

(Thereupon, the reporter marked for identification Deposition Exhibit No. 3.)
BY MR. EIDUKAS:
Q. Mr. Trebules, as you can see, this is three
page 49
pages from what appears to be a larger document. But if you can just take a moment to take a look at these and let me know if you're familiar with this.
A. (Pause). I note that from the two pages you gave me, it's only page 11 and 12. So I assume it was from a larger document.
Q. That's correct.
A. That's not included here.
Q. That's correct.
A. All right. I've looked over these two pages.
Q. Okay. Do you recall, have you seen these pages before?
A. I don't ever remember seeing these two pages.
Q. Okay. These refer to -- purport to refer to apparently a meeting or a conference that was held in mid-December 1983, during which Robert Morgan at the time appears to have been the Acting Director of Civilian Radioactive Waste Management gave this presentation or talk about the mission plan.
A. Right.
Q. Were you present for such a conference or meeting, whatever you want to call it?
page 50
A. I don't remember being at this meeting. I'm not even sure that I was working in the program at this time.
Q. Right.
A. This was in 1983.
Q. At the top of the middle page, page 11, on the right-hand side, the first full paragraph there says: "We have just received a preliminary draft of Volume I of the mission plan and we hope to have this available to interested parties, the states and others by Christmas."
Does that refresh your recollection as to whether or not work had been performed in preparing a mission plan prior to your arrival at the Office of Civilian Radioactive Waste Management?
A. I honestly don't remember that. I could only speculate that when he said we have just received a preliminary draft, it might have been a draft prepared by the support service contractor at the time, but I honestly don't remember that.

[107:22] - [109:17] 4/17/2002 Trebules, Victor W., Jr., Deposition 4/17/02

page 107
Q. Okay. Focusing on Exhibit 5, it's like the
page 108
page on the other side of the acceptance schedule. It's 2.1 we had looked at a little earlier. There's that section there we were looking at, the middle of that first paragraph where it talks about developing a waste acceptance schedule.
The next sentence, which I didn't read, says that -- and feel free to circle that or mark that if it helps you keep track of this. It says, "The acceptance rate is based on the emplacement capacity currently projected for the two planned geologic repositories and will be maintained by the department."
Is it your understanding that, again, this is referring to what you've discussed already, but is it your understanding that the acceptance rate that's found on the next page is based on the emplacement capacity projected for the repositories?
MR. SHULTIS: Objection, calls for legal conclusion.

**THE WITNESS: Let's see. The sentence reads "The acceptance rate is based on the emplacement capacity currently projected for the two planned geologic repositories." That's what we talked about.**

page 109

**The first one beginning at 400 ramping up to 900, 1800, to the -- as you said, steady state of 3,000. The second repository starting a few years later at 1800 metric tons for five years. Then reaching a steady state rate of 3,000 metric tons. Those were our planning assumptions at the time.**

**However, as I indicate and it goes on to say, "and these will be maintained by the department." I know, for example, that after this April 1984 Exhibit 5 version, when we published the mission plan in June of '85, we did also include waste acceptance schedules. We had I think two. One reflecting, as I previously indicated, the authorized system and another one reflecting the improved performance system. So we did, you know, continue to examine and evaluate waste acceptance schedules beyond Exhibit 5.**

**BY MR. EIDUKAS:**