**System Fuels, Inc., and Entergy Arkansas, Inc., v. US No. 03-2623C April 12, 2007**

**Heritage Reporting Corporation**

**Page 3339 to Page 3676**

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*HERITAGE REPORTING CORPORATION*
*1220 L Street, N.W.*
*Suite 600*
*Washington, DC 20005*
*Phone: 202-628-4888*
*FAX: 202-371-0935*

Page 3339

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
-------------------------------------x
SYSTEM FUELS, INC., and ENTERGY :
ARKANSAS, INC.,
Plaintiffs, NO 03-2623C
vs.
THE UNITED STATES, :
Defendant.
-------------------------------------x
Courtroom 6
National Courts Building
717 Madison Place NW
Washington, D.C

Thursday, April 12, 2007

The parties met, pursuant to the notice of the Judge at 9 03 a m.

BEFORE THE HONORABLE CHARLES LETTOW

Page 3340

APPEARANCES
ON BEHALF OF PLAINTIFF:
ALEX D. TOMASZCZUK, ESQ
JACK Y. CHU, ESQ.
Pillsbury Winthrop Shaw Pittman
1650 Tysons Boulevard
14th Floor
McLean, Virginia 22102
(703) 770-7674
and
JAY E SILBERG, ESQ.
Pillsbury Winthrop Shaw Pittman
2300 N Street, N W
Washington, D C 20037
(202) 663-8000
and
L. JAGER SMITH, JR., ESQ.
Wise Carter Child & Caraway, P.A
600 Heritage Building
401 East Capitol Street
Jackson, Mississippi 39201
(601) 968-5500

Page 3341

APPEARANCES (Continued.)
ON BEHALF OF THE DEFENDANT
JOSHUA E GARDNER, ESQ.
MARIAN SULLIVAN, ESQ
ALAN J. LO RÉ, ESQ
SCOTT DAMELIN, ESQ
U.S Department of Justice
1100 L Street, N.W.
Washington, D.C. 20036

***Index appears at end of transcript***

Page 3342

P R O C E E D I N G S
- - - - - (9 03 a.m )

THE COURT Welcome back The Court appreciates the organization and care with which the site visit was undertaken and successfully accomplished Is there anything preliminarily this morning before we begin, Mr Gardner?

MR GARDNER: Not from the government, Your Honor

THE COURT. Mr Tomaszczuk?

MR TOMASZCZUK Nor from Plaintiffs.

THE COURT All right. Yes?

MR. GARDNER: And the government would call its next witness, Christopher Kouts

THE COURT: Thank you very much. Mr. Kouts, you're familiar with the process, if you'd approach the bench and stop and raise your right hand to be sworn?

THE WITNESS: Yes, sir.

Whereupon--

CHRISTOPHER KOUTS

a witness, called for examination, having been duly sworn, was examined and testified as follows:

THE COURT: Thank you. Please be

Page 3387

purposes, recognizing that the MRS Review Commission is to provide an independent assessment of the need for an MRS facility before the DOE can start site surveys and evaluations."

Q. And, Mr. Kouts, were you involved in the work of the MRS Review Commission?

A. I provided information to the commission and the commission staff and essentially was involved in the development of this DOE position on it, but I did not work directly for the commission. I did provide information to them.

Q. Could I direct your attention to the next section on that page titled, "Statutory Conditions on the MRS Facility"? And in the interest of time, I won't have you read that into the record, but I just direct your attention to the first paragraph, paragraph numbered one on that page, there's a reference to, "The MRS Review Commission submits in November of '89 a report." Did the MRS Commission submit its report in November of 1989?

A. Yes, it did.

Page 3388

Q. Did you review that report at the time it was issued?

A. Yes, I did.

Q. And why was that?

A. Well, this was important information, since Congress essentially set up this commission to evaluate the need for the facility, and of course, the Department had a very special interest in an MRS facility since it was the only facility that we felt we could have available in the 1998 timeframe, since the repository program was delayed. So whatever findings that commission came up with and recommendations were of great interest to the Department.

Q. May I have Defendant's Exhibit 321, please?

MS. SULLIVAN: May I approach, Your Honor?

THE COURT: Yes.

BY MS. SULLIVAN:

Q. Mr. Kouts, would you identify Defendant's Exhibit 321?

A. Yes, this is the report of the Monitored Retrievable Storage Commission that I

Page 3389

mentioned earlier.

Q. And this is the document you would have reviewed?

A. Yes.

Q. About the time it was issued?

A. Yes.

MS. SULLIVAN: Your Honor, at this time, we'd move for admission of Defendant's Exhibit 321.

MR. SILBERG: No objection.

THE COURT: Admitted.

(Defendant Exhibit Number DX-321 was received in evidence.)

BY MS. SULLIVAN:

Q. I direct your attention, Mr. Kouts, to the page of the document with the Bates number ending 3994. It appears to be the cover letter transmitting the document.

A. Okay.

Q. And if we could bring up the last paragraph on that page, if you could read that into the record, please?

A. "The Commission notes that the Congress, for many years, has expressed concern that an unlinked MRS might be regarded as a de

Page 3390

facto repository and could reduce the impetus for proceeding with permanent geologic disposal. The Commission recognizes this expression of Congressional will, as well as similar sentiments voiced during the course of its hearings. Although the Commission does not believe there is a technical basis for the linkages, the Commission concludes that some linkages are justified."

Q. Mr. Kouts, did you understand this reference to the linkages to be the limits on the operation of the MRS that we've been discussing?

A. Yes.

Q. If we could turn to page XVI, the executive summary ending in Bates number 4006, if we could look at conclusion four, if we could, if you could read that conclusion four, please, into the record?

A. Okay. Conclusion number four, "An MRS linked, as provided in current law, would not be justified, especially in light of uncertainties in the completion time for the repository. Consequently, the Commission does not recommend a linked MRS as required by

Page 3391

current law and as proposed by DOE. The Commission notes that members of Congress, other public officials, environmental groups, and many private citizens for many years have expressed concern that an unlinked MRS might be regarded as a de facto repository and thereby would reduce the impetus for building the repository as expeditiously as possible. Although the Commission does not believe there is a technical basis for the linkages, the Commission agrees that, in light of Congressional and other concerns about a de facto repository, some linkages are justified. However, the schedule linkages presented in the NWPAA, MRS construction may not begin until the Nuclear Regulatory Commission issues a license for the construction of the repository, would make it impossible for an MRS to be operational for more than three years before the repository. Because of delays already experienced in the repository schedule and continued uncertainty surrounding the repository's location and date of operation, the value of

Page 3392

the MRS would be greatly diminished if its construction were tied to the schedule of the repository. Most of the need for an MRS would have disappeared, and that utilities would have had to make other arrangements for storage.

MR. SILBERG: Excuse me. I think when Mr. Kouts read that, he read, "is impossible for an MRS to be operational for more than three years," and I think the text says, "operational more than three years."

THE WITNESS: I'm sorry.

THE COURT: Thank you, Mr. Silberg. Ms. Sullivan, you may continue

MS. SULLIVAN: Thank you, Your Honor.

BY MS. SULLIVAN:

Q. Mr. Kouts, how did DOE view this conclusion by the MRS Commission regarding the linkages proposed by the NWPA amendments?

A. Well, this perspective of the Commission is consistent with the Department's experience in the development of an MRS site in Tennessee and the other sites that we dealt with, so the Department was in agreement with the perspective of the Commission in this regard

Page 3393

Q. Mr. Kouts, I'd now like to show you Defendant's Exhibit 68, another document dated November '89.

MS. SULLIVAN: May I approach, Your Honor?

THE COURT: Yes.

BY MS. SULLIVAN:

Q. Mr. Kouts, would you please identify this document for the record?

A. Yes, this is a report to Congress on the reassessment of the program that was essentially directed by the Secretary of Energy at that time, Admiral James Watkins. When he came into his position as Secretary, he directed that a reassessment of the program be undertaken, and this was eventually provided to Congress after he completed his assessment.

Q. Were you involved in the preparation of this document?

A. No, I was involved in a review of it prior to the time it went out.

Q. And what position did you occupy within the program at the time this document was issued?

A. At this point in time, I was still

Page 3394

head of a transportation program within the program.

MS. SULLIVAN: Your Honor, at this time, I would move for the admission of Defendant's Exhibit 68.

MR. SILBERG: No objection.

THE COURT: Admitted.

(Defendant Exhibit Number DX-68 was received in evidence.)

BY MS. SULLIVAN:

Q. Mr. Kouts, to your knowledge, was this document provided to Congress?

A. Yes, it was.

Q. What were the results of the Secretary's reassessment of the program schedule?

A The major change was a change to the repository schedule and a delay in the first repository even further from 2003 to 2010, and at this point in time, the Secretary was also very mindful of our need to have a facility to meet our contract obligations available in 1998 and directed that, essentially, that we would support the Office of the Nuclear Waste Negotiator in trying to find a site, and we