IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROLINA POWER & LIGHT COMPANY and FLORIDA POWER CORPORATION, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-37C (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR RECONSIDERATION

Pursuant to Rule 59 of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court reconsider its opinion dated May 19, 2008.

DISCUSSION

I. THE COURT HAS AUTHORITY TO RECONSIDER ITS OPINION

RCFC 59(a)(1) authorizes this Court to reconsider prior rulings. Specifically, "reconsideration may be granted to . . . any of the parties and on . . . part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The Court has discretion to decide whether to grant reconsideration. Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990); Paalan v. United States, 58 Fed. Cl. 99, 105 (2003). Reconsideration of a determination is confined to those situations where the Court's decision is based "upon manifest error of law [] or mistake of fact." Id. at 105 (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)). Respectfully, the Court's opinion of May 19, 2008 contains three manifest factual errors and omissions and, therefore, warrants reconsideration.

## II. THE COURT FAILED TO CONSIDER UNDISPUTED EVIDENCE OF AN INDEPENDENT REASON TO PERFORM RAILROAD TRACK MAINTENANCE

We contended at trial that the costs that Progress Energy incurred to perform maintenance work on the railroad tracks connecting its plants in the Carolinas were not recoverable because they would have been incurred even had DOE begun accepting spent fuel in 1998 at either a 900 Metric Ton Uranium ("MTU") or a 3,000 MTU annual rate. Although the Court rejected our argument because of its determination that the "Government speculates that DOE would have accepted fuel by rail had it performed," slip op. at 32, this conclusion overlooks one of the two independent justifications that we offered as to why the maintenance costs would have been incurred irrespective of DOE's delay – the need, identified by plaintiffs themselves, to transship 782 assemblies of spent fuel by rail after January 31, 1998 even in the event of DOE fuel acceptance at the 3,000 MTU rate. See, e.g., Def.'s Post-Tr. Br. at 153. Regardless of whether the manner in which DOE would have accepted fuel is speculative, plaintiffs themselves acknowledged the need, even assuming DOE's acceptance of spent fuel at an annual rate of 3,000 MTU, to transship substantial amounts of their own spent fuel after January 31, 1998. Joint Stip. No. 59. Both the primary witness in support of their claim, Steven Edwards, and our technical expert, Gregory Maret, testified that railroad maintenance was required to support these transshipments. Edwards, Tr. 475:1-25, 579:1-13; Maret, Tr. 1828:7-19; PX 137 at CP_FP000188814; DX 307 at 17. Plaintiffs failed to provide any evidence that any portion, let alone all, of the railroad costs that they claimed as damages would not have been incurred to support these transshipments in the absence of DOE's delay. As a result, $260,037 of railroad maintenance charges should be deducted from plaintiffs' claim.

## III. THE COURT FAILED TO INCLUDE THE COST OF OVERHEAD ASSOCIATED WITH PERFORMING A RERACK AT THE HARRIS SPENT FUEL POOL

We contended at trial and continue to maintain that overhead costs allocated to projects that are determined to be caused by the delay in spent fuel acceptance are not recoverable as damages unless they reflect an increase in the amount of overhead costs that is attributable to the delay. See Precision Pine & Timber v. United States, 81 Fed. Cl. 235, 287 (2007) ("While it is true, as plaintiff argues, that it actually incurred such overhead costs in the post-suspension period, it is equally true that plaintiff would have incurred these costs irrespective of defendant's breach.").

In its May 19, 2008 opinion, the Court rejected our argument and determined that overhead expenses that are properly charged to breach-related projects are recoverable as damages. Slip op. at 34-35. However, the necessarily corollary of the Court's conclusion is that overhead expenses allocable to projects that plaintiffs concede would have been required (but were avoided) had DOE begun accepting fuel in 1998 rate should be credited against damages. In other words, if overhead charges are properly included in plaintiffs' calculation of damages, any overhead charges that would have been allocated to projects that plaintiffs have avoided as a result of DOE's delay must also be accounted for in the calculation of damages.

Here, plaintiffs acknowledged that, to accommodate spent fuel acceptance at the 3,000 MTU rate, they would have been required to perform a rerack of the Harris "B" pool. Joint Stip. No. 59. To do so, they would have been required to expend both $1,087,280 on the direct costs of such a project (an amount that they deducted from their calculations of damages at the 3,000 MTU rate), id., and an additional $42,295 in overhead charges (an amount that was not included

in the $1,087,280 "credit" that plaintiffs provided). Edwards, Tr. 479:10-481:17, DX 305 at 2. As long as overhead is deemed to be included in plaintiffs' claim, the amount of the credit provided for the "B" pool rerack must also, for the sake of consistency, include an additional $42,295 to account for the associated overhead charges that plaintiffs avoided.

## IV. THE COURT FAILED TO DEDUCT THE ENTIRETY OF PLAINTIFFS' CLAIM FOR THE ALLOWANCE FOR FUNDS USED DURING CONSTRUCTION

In its opinion of May 19, 2008, the Court determined that plaintiffs' claim for the allowance for funds used during construction ("AFUDC") was "in reality a claim for interest against the Government" and, therefore, deemed $1,996,045 of the amount sought by plaintiffs to be unrecoverable. Slip op. at 4. In so doing, the Court neglected to deduct all of the AFUDC charges that were included in the projects that the Court deemed recoverable. To avoid double-counting of AFUDC amounts already included in other components of plaintiffs' claims and removed in the course of other adjustments, our damages expert, Larry Johnson, deducted, at the 3,000 MTU rate of acceptance, $1,966,045 (out of $2,018,111 claimed) in AFUDC costs from his calculation of plaintiffs' damages. This deduction did not include the AFUDC components of plaintiffs' claims for crud and sludge cleanup ($1,518 and $12,584, respectively) or the "CCW" upgrade ($7,724), because Mr. Johnson, acting upon the assumption that those projects were not recoverable, had already deducted the entire cost of each of them. DX 308 at 16 n.52, 27; DX-D5 at 43; Def.'s Proposed Finding of Fact Nos. 457-59; see also Johnson, Tr. 2000:17-2002:10 (explaining the analogous calculation at the 900 MTU rate, as set forth at DX-D5 at 34). Because the Court deemed the crud and sludge cleanups costs to be recoverable, the amounts of AFUDC included in these projects (the sum of $1,518 and $12,584, or $14,102)

should be included in the AFUDC deduction, and the damage award should be reduced by that amount.[1]

CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court reconsider its opinion dated May 19, 2008, and reduce its award of damages by $316,434.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Andrew P. Averbach
ANDREW P. AVERBACH
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0527
Tel: (202) 305-7643

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, DC 20585

ALAN J. LO RE
MARIAN E. SULLIVAN
Senior Trial Counsel

CHRISTOPHER J. CARNEY
LISA L. DONAHUE
STEPHEN FINN
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

June 2, 2008

Attorneys for Defendant

[1] No adjustment is required for the AFUDC portion of the CCW upgrade ($7,724) because the Court deemed the cost of that project to be unrecoverable. Slip op. at 37-38.

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of June, 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Andrew P. Averbach