IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CAROLINA POWER & LIGHT COMPANY, et al.**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | No. 04-37C<br>(Judge Wheeler) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**MOTION FOR RECONSIDERATION**

Pursuant to the Court's order dated June 2, 2008 and Rule 59(b) of the Rules of the Court of Federal Claims ("RCFC"), Plaintiffs Carolina Power & Light Company and Florida Power Corporation (collectively "Progress Energy") respectfully file this Response to Defendant's Motion for Reconsideration.[1]

DISCUSSION

I. STANDARD OF REVIEW

"A motion for reconsideration of a final judgment functions not as another round of briefing in an open case, but as a request for extraordinary relief in a matter that has been closed." *Four Rivers Invs., Inc. v. United States*, 78 Fed. Cl. 662, 664 (2007) (citing *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004)). "Motions for Reconsideration must be

[1] The government's motion involves approximately $316,434 of the $82.8 million award in this matter, or less than one half of one percent (*i.e.,* 0.38%) of the judgment. Assuming that the government will appeal, however, the government's motion may well have successfully delayed the date by which Progress Energy will actually receive payment by at least some five weeks, by deferring the date by which the government must file a notice of appeal. Without the running of interest, that five week delay potentially cost Progress Energy more than the amount challenged by the government. (The time value of $82.8 million for five weeks at a conservative return rate of 4% would be $318,638, or $63,727.62 per week.)

supported 'by a showing of extraordinary circumstances which justify relief.' " *Caldwell*, 391 F.3d at 1235 (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (table)).

A court may grant such a motion when the moving party has met the "exacting standard of identifying 'a manifest error of law or mistake of fact.' " *Browning Ferris Indus., Inc. v. United States*, 2007 WL 1412087, at *1 (Fed. Cl. May 10, 2007) (citing *Pacific Gas & Elec. co. v. United States*, 58 Fed. Cl. 1, 2 (2003)). To establish a manifest legal or factual error, the moving party must demonstrate "(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." *Amber Resources Co. v. United States*, 78 Fed. Cl. 508, 514 (2007) (quoting *Stockton E. Water Dist. v. United States*, 76 Fed. Cl. 497, 499 (2007)); *see also Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 243 (2003) (same).

To prevail on a motion for reconsideration, the moving party "must do more than 'merely reassert[] arguments which were previously made and were carefully considered by the court.''' *Bannum*, 59 Fed. Cl. at 243 (quoting *Henderson County Drainage Dist. No. 3 v. United States*, 55 Fed. Cl. 334, 337 (2003)). "[M]otions for reconsideration are not intended to allow a party to reassert arguments that the Court has already considered." *Browning Ferris Indus.*, 2007 WL 1412087, at *1 (citations omitted); *see also Fru-Con Constr.*, 44 Fed. Cl. at 300 ("[RCFC 59] is not intended to give an unhappy litigant an additional chance to sway the court.")

Similarly, "[a] party may not use a motion for reconsideration to raise arguments that it could have raised previously, but did not." *Browning Ferris Indus.*, 2007 WL 1412087, at *1; *see, e.g.*, *Bernard v. United States*, 12 Cl. Ct. 597, 598 (1987) ("Motions pursuant to [RCFC] 59 are not to be used as relief because an unhappy party failed to urge a theory which it could have

raised in original proceedings.”).

## II. THE GOVERNMENT’S ATTEMPT TO REARGUE RAILROAD TRACK MAINTENANCE COSTS SHOULD BE REJECTED

The government’s assertion that Progress Energy should not recover railroad track maintenance costs is (a) wrong, and (b) plainly an attempt to reargue an issue that has already been decided by this Court. That request should be denied under the above-cited standards.

The government’s argument is that Progress Energy should not recover railroad maintenance costs because there are some transshipments that would have been made between the Progress Energy plants after January 31, 1998. (Def.’s Mtn to Reconsider at 2.) The government made this same assertion in its post-trial brief. (Def’s Post-Tr. Br. at 153.) The controlling point, however, is that the actual costs claimed by Progress Energy related to periods when transshipments between Progress Energy plants would <u>not</u> have occurred if DOE had performed, and the costs are therefore recoverable. It is pure speculation for the government to contend that potential track maintenance might have been required for shipments to DOE, especially given DOE’s failure even to commit to use of rail casks. The Court therefore correctly held that “Plaintiffs have demonstrated that DOE’s partial breach was a substantial causal factor of the cost of the railroad track maintenance, and Defendant has provided no reason to deduct the costs.” *Carolina Power & Light Company v. United States*, __ Fed. Cl. __, 2008 WL 2154103 (May 19, 2008), slip op. at 32. The Court did not “overlook” the government’s assertion—it rejected it. RCFC 59 is not intended as a means for a party to reassert arguments previously considered by the Court. The government’s request to reconsider the judgment on the issue of railroad maintenance costs should be denied.

And the record confirms the correctness of the Court’s original rejection of the government’s argument. The government relies solely on the fact that *some* transshipments

would have been made after January 31, 1998 even if DOE had performed under the Standard Contract. But not *all* transshipments after January 31, 1998 would have occurred absent DOE's breach. "Progress Energy would have ceased transshipping from Robinson in 1997, from Brunswick Unit 2 in 1999, and from Brunswick Unit 1 in 2001." (Pls' 2/19/08 Resp. Br. at 34; Edwards, Tr. 475-76, lines 12-25; PX 137 at CP_FP00018812-16.) And the railroad maintenance costs at issue, which were charged to transshipment campaigns Progress Energy sought recovery for, supported only breach-related transshipments. (Pls' 2/19/08 Resp. Br. at 34; Edwards, Tr. 386, lines 16-20.)

Specifically, the government is apparently challenging the following costs related to railroad maintenance:

| Plant | Project No. | Posting Date | Amount | PX140 – Page No. |
|---|---|---|---|---|
| Robinson | A0014278 | 4/25/2000 | $12,027 | CP_FP000000729 |
| Robinson | A0014278 | 4/25/2000 | $5,425 | CP_FP000000729 |
| Harris | | 7/26/2000 | $22,396 | CP_FP000000746 |
| Harris | A0014364 | 8/1/2001 | $28,970 | CP_FP000000966 |
| Harris | A0014364 | 8/10/2001 | $7,796 | CP_FP000000858 |
| Robinson | 20020536 | 5/24/2002 | $6,578 | CP_FP000000668 |
| Robinson | A0014292 | 5/24/2002 | $6,384 | CP_FP000000772 |
| Robinson | A0014295 | 5/24/2002 | $6,384 | CP_FP000000774 |
| Robinson | 20020536 | 5/23/2003 | $8,337 | CP_FP000000693 |
| Robinson | A0014292 | 5/23/2003 | $8,092 | CP_FP000000811 |
| Robinson | A0014295 | 5/23/2003 | $8,092 | CP_FP000000814 |
| Robinson | A0014292 | 7/1/2004 | $34,220 | CP_FP000000853 |
| Robinson | A0014295 | 7/1/2004 | $34,220 | CP_FP000000858 |
| Robinson | A0014292 | 7/1/2005 | $35,558 | CP_FP000000906 |
| Robinson | A0014295 | 7/1/2005 | $35,558 | CP_FP000000908 |
| | | | $260,037 | |

All railroad maintenance costs claimed by Progress Energy were incurred after 2000, and the vast majority of those costs were incurred at Robinson. Progress Energy would have stopped transshipping fuel from Robinson to Harris in 1997. (PX 137 at CP_FP000188812.) There is simply no basis for the government's argument that costs incurred to support transshipments

from Robinson after 1997 would have been incurred in the absence of DOE's delay. Also, by 2000, most shipments coming into Harris were from Robinson or Brunswick Unit 2 and thus were breach-related. As volume and expected use impacts the maintenance work required on railroad tracks (Edwards, Tr. 391, lines 2-20), the three claimed charges for Harris were also appropriately charged to breach-related transshipments (especially considering that two of those charges were in 2001, after which no transshipments from any of the plants would have been required had DOE performed under the contract).

The government has already litigated and lost its claim that railroad maintenance costs are not recoverable merely because some transshipments would have been made after January 31, 1998. In its reconsideration motion, as in its prior filings, the government ignores the fact that the claimed costs were incurred to support transshipments that Progress Energy was required to undertake because of DOE's breach. There has been no change in law, previously unavailable evidence, or manifest injustice, and the government has not come close to meeting the applicable standards for a reconsideration motion with regard to the railroad maintenance costs.

## III. THE GOVERNMENT FAILED TO MAKE THE ARGUMENT THAT THE COST OF OVERHEADS ASSOCIATED WITH A HYPOTHETICAL RERACK SHOULD BE DEDUCTED FROM PROGRESS ENERGY'S DAMAGES

The government argues that because overheads are included in Progress Energy's claim, an overhead charge should be added to Progress Energy's voluntary deduction. (Def.'s Mtn to Reconsider at 3.) The deduction was based on the estimated amount to rerack the B pool at Harris to avoid the need to activate the C and D pools had DOE performed under the Standard Contract. Progress Energy agrees that overheads are part of the cost of conducting a project and are thus recoverable. As a result, Progress Energy does not dispute that including overheads in an estimate for a project avoided would make the estimate more comprehensive. The

government, however, after eliciting testimony on this point and introducing an exhibit that gives an estimate for overheads on the hypothetical rack project, never made this argument in its post-trial briefs. Clearly, that was a strategic choice. The government knew about this evidence and had the opportunity to make, at least in the alternative, the argument it now makes upon reconsideration, but it chose not to do so. Perhaps the government did not want to be seen as detracting from its categorical "overheads are not incremental" position. In any event, motions for reconsideration should not be used to assert theories that could have been raised earlier but were not. *E.g., Four Rivers Invs., Inc.,* 78 Fed. Cl. at 664.

While Progress Energy does not dispute the logic of the government's reconsideration position, we respectfully suggest that, in these circumstances and under the applicable standards, the Court would be well within its permissible discretion to deny the government's request.

IV. THE GOVERNMENT FAILED TO PRESENT AFUDC NUMBERS CLEARLY

Reconsideration constitutes a request for extraordinary relief and the government must satisfy the "rigorous standards" of RCFC 59 to prevail. *E.g., Caldwell*, 391 F.3d at 1235. The government requests the Court to reopen the judgment to reduce Progress Energy's damages by $14,102. According to the government, "the Court neglected to deduct all of the AFUDC charges that were included in the projects that the Court deemed recoverable." (Def.'s Mtn to Reconsider at 3.) The Court, however, actually reduced Progress Energy's claim by more than the government requested in its post-trial brief. The government argued that "[a]t the 3,000 MTU rate, an adjustment for $1,9**6**6,045 in AFUDC costs is warranted." (Def's Post-Tr. Br. at 167) (emphasis supplied). The Court, based on Mr. Johnson's opinion, removed $1,9**9**6,045 of AFUDC charges. (DX 308 at 27.) To add to the confusion, the government uses both figures, $1,966,045 and $1,996,045, in the same paragraph in its motion for reconsideration. (Def.'s Mtn

to Reconsider at 4.)

Maintaining the trend of misstating numbers, the government now asks for "the sum of $1,518 and $12,584, or $14,102" to be added to one of the $1.9 million figures, presumably the larger one. (Def.'s Mtn to Reconsider at 4). But according to Mr. Johnson, the proper adjustment to the AFUDC charge should be the sum of $1,518 and $12,824, or $14,342, (DX 308 at 27), not $14,102.

While Progress Energy respectfully disagrees with the Court's decision that borrowed money must be tied to specific projects, Progress Energy recognizes (once the numbers are straightened out) that the way the government presented its defenses, some AFUDC was removed with other alleged adjustments. (1/22/08 Def. Br. at 167.) The government's inaccuracy certainly causes confusion, however, and the circumstances do not seem to rise to the level of "manifest injustice." To the extent that Court determines to exercise its discretion to reopen the judgment to remove additional AFUDC costs, the correct amount that Progress Energy's claim should be adjusted is $14,342.

CONCLUSION

In its motion for reconsideration, the government has merely reasserted its railroad maintenance cost argument that was previously made and rejected by the Court, and that request should be denied. With regard to overheads, the government asserts arguments that it could have timely raised but did not. With regard to AFUDC, the government has created confusion, and fallen short of showing "manifest injustice." Progress Energy, therefore, respectfully requests that the Court deny the government's motion to reconsider.

DATED: June 16, 2008

Respectfully submitted,

s/ Brad Fagg

Brad Fagg
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

Attorneys for Plaintiffs

Of Counsel:
Paul M. Bessette
David M. Kerr
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Telephone: (202) 739-3000
Facsimile: (202) 729-3001

**CERTIFICATE OF SERVICE**

I, Brad Fagg, hereby certify that on this 16th day of June, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

____/s Brad Fagg______
Brad Fagg