IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROLINA POWER & LIGHT COMPANY and FLORIDA POWER CORPORATION, | ) | |
| Plaintiffs, | ) | No. 04-37C |
| v. | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant, the United States, respectfully submits this reply to plaintiffs' response to defendant's motion for reconsideration.

DISCUSSION

On June 2, 2008, we moved for reconsideration of the Court's opinion dated May 19, 2008.[1] Beyond correcting a typographical error, plaintiffs' response does not provide any basis for opposing our motion or the relief that we seek.

Railroad Maintenance Costs

The first issue that we identified in our motion related to the Court's failure to take into account the cost of railroad maintenance that would have been required, as plaintiffs themselves admitted, to permit the transshipment of spent nuclear fuel among plaintiffs' plants in the Carolinas had spent fuel acceptance commenced in 1998. In response, plaintiffs provide a table, the specific contents of which were never presented during trial, indicating that some (but not all)

[1] Unlike plaintiffs, who insinuate in footnote 1 of their response that the Government filed its motion as a means of forestalling the collection of a judgment, we filed our submission prior to the day it was actually due. Similarly, we are filing this reply promptly upon receipt of plaintiffs' response.

of the charges pertain to maintenance performed at plaintiffs' Robinson plant after the time that transshipments from Robinson would have ceased.

In addition to the fact that it was not presented at trial, plaintiffs' reliance upon this breakdown is unavailing. Plaintiffs completely fail to explain how the three enumerated charges (totalling $59,162) associated with the Harris plant, all of which were posted before the end of the Harris transshipment campaigns in 2001, can possibly be classified as damages. There was no dispute at trial that, even assuming acceptance of spent fuel by DOE at a 3,000 MTU rate, plaintiffs would have needed to maintain the tracks leading to the Harris plant in order to ship nuclear waste by rail. Edwards, Tr. 475:1-25, 579:1-13; Maret, Tr. 1827:16-1828:19; PX 137 at CP_FP000188814; DX 307 at 17. Although plaintiffs rely upon generalized trial testimony indicating that "volume and expected use impacts the maintenance work required on railroad tracks," they point to (and elicited) no evidence to satisfy their <u>burden</u> of proving that the maintenance work performed at Harris would not have been incurred in the absence of a breach.[2]

Despite knowing long before trial that the Government was contesting the railroad maintenance charges because this work would have been required both to support loading to DOE <u>and</u> to support plaintiffs' transshipment campaigns, <u>see, e.g.</u>, Def's Pre-Trial Brief at 69 & n.27), plaintiffs never attempted at trial to isolate any portion of the maintenance charges that

[2] Plaintiffs also assert on page 4 of their response that the maintenance costs at issue "supported only breach-related transshipments." However, the only evidence to which they cite in support of this proposition (Edwards, Tr. 386:16-20) does not speak to this issue. To the extent that plaintiffs are attempting to refer to page 389 of the transcript (the page they cited on page 34 of their post-trial response brief), the testimony on that page merely indicates that the maintenance charges were charged to the transhipment campaigns for which plaintiffs seek recovery. It does not address the entirely separate issue of which transshipments the maintenance work "supported."

would not have been required to support transshipments had DOE begun accepting spent fuel in 1998. At trial, we even introduced evidence indicating that some of the claimed railroad maintenance charges were incurred at the Harris plant in 2000, during the very period of time during which that transshipment campaigns would still have been occurring (regardless of the rate of spent fuel acceptance adopted by the Court). PX 107, Johnson, Tr. 1965:23-1966:25. Simply stated, plaintiffs claimed entitlement at trial to $260,000 in damages in railroad maintenance charges, knowing full well that the basis for asserting entitlement to approximately $59,000 of these charges was dubious at best, and never made any attempt at trial to identify any portion of the $260,000 that would not have been incurred in the absence of the delay in spent fuel acceptance. Plaintiffs' belated effort to present evidence of entitlement to any portion of this amount should not be countenanced.

Inclusion Of Overhead Charges In Cost Of Hypothetical Rerack

Plaintiffs offer no serious response to our arguments concerning the application of overhead rates to the cost of a hypothetical rerack. Although they assert on page 6 of their response that we "failed to make the argument" that the cost of a rerack should include $42,295 in overhead charges, they appear to have overlooked our proposal that the Court make a finding of fact to precisely this effect. See Def.'s Proposed Findings of Fact Nos. 206-07 ("Had the rerack been performed, the amount of overhead charges that would be allocated to the Harris "B" pool rerack project would be $42,295."). The notion that we made a "strategic" choice not to seek an adjustment for any overheads associated with a rerack project is patently false. In response to the Court's directive that the parties submit proposed findings of fact as part of their

post-trial briefs, we made precisely the argument that plaintiffs now assert that we "strategically" chose not to make.

AFUDC Charges

Plaintiffs' half-hearted response to the final basis for our reconsideration motion fares no better. As plaintiffs acknowledge, the proper calculation of the deduction of AFUDC charges should be increased by $14,342 (and not, as we erroneously suggested, $14,102). Plaintiffs' counsel stated no fewer than three times during his closing argument that litigation is not a game of "gotcha." Plaintiffs' resort to litigation by typographical error is inconsistent with this sentiment.

CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court reconsider its opinion dated May 19, 2008, and reduce its award of damages by $316,674.

.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Andrew P. Averbach
ANDREW P. AVERBACH
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0527
Tel: (202) 305-7643

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
CHRISTOPHER J. CARNEY
LISA L. DONAHUE
STEPHEN FINN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

June 18, 2008

Attorneys for Defendant

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 18th day of June, 2008, a copy of "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Andrew P. Averbach